UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

REINHART COMPANIES EMPLOYEE
BENEFIT PLAN and REYES HOLDINGS
WELFARE BENEFIT PLAN,

        Plaintiffs,

                                Case No.  2:09-CV-169

v.

                                HON. GORDON J. QUIST

CORY VIAL and PAULA VIAL, individually
and as co-conservators of CHANDLER VIAL,

        Defendants.

_____/

## OPINION

        Plaintiffs, Reinhart Companies Employee Benefit Plan and Reyes Holdings Welfare Benefit Plan (the "Plans"), have sued Defendants, Cory Vial and Paula Vial (the "Vials"), individually and as co-conservators of Chandler Vial, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. 1001, *et seq.*  The Plans seek reimbursement of benefits they paid for the medical care and treatment of the Vials' minor son, Chandler, through the imposition of a constructive trust and enforcement of equitable liens on funds from a settlement in a medical malpractice case the Vials filed for injuries Chandler allegedly sustained during his birth.

        On December 2, 2009, the Court entered an Opinion and Order denying the Vials' motion to dismiss and for judgment on the pleadings.  The Plans and the Vials have now filed cross motions for summary judgment.  For the reasons set forth below, the Court will deny the Plans' motion and grant the Vials' motion in part and deny it in part.

# I. BACKGROUND AND PROCEDURAL HISTORY

Cory Vial was a participant and enrolled member of the Reinhart Plan through December 31, 2005, and a participant and enrolled member of the Reyes Plan after January 1, 2006. Chandler was born on January 1, 2004, and was a covered dependent under the Plans during these periods.[1] Complications arose during Chandler's birth, requiring extensive medical care and treatment. During the period of January 1, 2004, through December 5, 2005, the Reinhart Plan paid claims totaling $55,403.47 for Chandler's medical care and treatment. (Farr Decl. ¶ 7, Pls.' Mot. Summ. J. Ex. 7.) Between January 1, 2006 and July 1, 2007, the Reyes Plan paid claims totaling $31,947.89 for Chandler's medical care and treatment. (Clark Decl. ¶ 7, Pls.' Mot. Summ. J. Ex. 8.)

On or about September 5, 2006, the Vials, individually and as next friends for Chandler, sued the medical providers in the Marquette County Circuit Court alleging that they committed malpractice that resulted in serious injuries to Chandler during his birth. In particular, the Vials alleged that as a result of the providers' malpractice, Chandler "suffered serious injuries including, but not limited to, a massive subarachnoid hemorrhage and subdural hematoma, resulting in a seizure disorder and cerebral palsy." (Vials' Pretrial Statement at 2, Pls.' Mot. Summ. J. Ex. 2.) The providers disputed the allegations, alleging that Chandler's injuries occurred *in utero* as a result of a disorder from which Paula Vial suffered known as a "thrombophilia." In addition to other damages, the Vials sought to recover past medical expenses.

As a result of a mediation, the Vials and the providers reached a settlement pursuant to which the providers were to pay $400,000, allocated as follows: (1) $190,000 to the Vials' attorneys for fees and costs; (2) $60,000 to the Vials, as co-conservators for Chandler; and (3) $150,000 for the

---

[1] Reinhart Real Estate Group, Inc. was the plan sponsor and administrator of the Reinhart Plan through December 31, 2005, and Reyes Holdings, LLC, the successor in interest to Reinhart Real Estate Group, Inc., was the plan sponsor and administrator of the Reyes Plan beginning on January 1, 2006. (Emery Decl. ¶¶ 3-4, Pls.' Mot. Summ. J. Ex. 10.)

purchase of an annuity for Chandler. Although the Vials were aware of the Plans' claims for reimbursement of the medical expenses they had paid, those expenses were not included in the settlement agreement. However, the agreement provided that the providers and their insurer would remain responsible for all medical liens asserted in the case. On May 18, 2009, the state court entered an order approving the settlement agreement and distribution of the settlement proceeds. Although defense counsel in the underlying case notified the Plans that the claim for past medical bills had not been resolved, the Plans declined to pursue their claims for medical expenses in the state court proceeding.

The Plans are self-funded, ERISA-qualified employee welfare benefit plans.[2] (Farr Decl. ¶ 2; Clark Decl. ¶ 2.) Both Plans contain reimbursement provisions that give the Plans the right to reimbursement from enrollees or beneficiaries in certain circumstances for benefits paid by the Plans.[3]

The Plans filed the instant case on August 8, 2009, seeking equitable relief pursuant to their reimbursement provisions and § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), through the imposition of a constructive trust and enforcement of their equitable liens against the settlement proceeds. On December 2, 2009, the Court entered an Opinion and Order denying the Vials' motion to dismiss and for judgment on the pleadings. In particular, the Court held that: (1) it has subject matter jurisdiction over the Plans' claims for equitable relief under ERISA; (2) the Plans' claims are ripe; (3) the Plans' claims are not moot; (4) the Plans stated a claim for equitable relief under ERISA; (5)

---

[2] The Vials assert that the Plans are insurance-funded rather than self-funded and are therefore governed by the law of Michigan. The Vials rely on the Plans' Form 5500s, but it is not at all clear from those forms whether insurance was used to fund the Plans. The Form 5500s indicate that the insurance was "Code section 412(i) insurance contracts." "A '412(i)' plan under the Internal Revenue Code is an employer-sponsored pension plan that, upon meeting certain requirements, qualifies for favorable tax treatment." *Berry v. Indianapolis Life Ins. Co.*, No. 3:08-CV-0248-B, 2010 WL 3422873, at *1 n.2 (N.D. Texas Aug. 26, 2010). There is no indication in the record that the "412(i) insurance contracts" relate to the medical plans.

[3] Both Plans also contain subrogation provisions, which are not at issue in this case.

the Plans have standing under ERISA to assert their claims; and (6) Bell Memorial Hospital was not a required party under Rule 19(a)(1).

## II. MOTION STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## III. DISCUSSION

### A.    Effect of Prior Ruling

Initially, the Court addresses the parties' dispute regarding the scope and effect of the December 2, 2009, Opinion and Order. The Plans assert that the prior Opinion and Order rejected the Vials' defenses in avoidance of the Plans' claims, such that they are entitled to summary judgment on their claims for equitable relief. The Vials respond that while the Court did decide the jurisdictional and procedural issues they raised and concluded that the Plans' complaint was not subject to dismissal under Rule 12(b)(6), the Court did not address their substantive arguments regarding the merits of the Plans' claims, which remain for decision. Both parties are correct, to a certain extent. Because the prior motion was based, in large part, on the pleadings, the Court's

rulings were confined to the sufficiency of the allegations of the complaint and to jurisdictional and procedural issues based upon those allegations. Thus, the Court did not consider matters beyond the pleadings in determining the Plans' rights to relief.

The prior Opinion does foreclose some aspects of the Vials' arguments. First, the Court held that the Plans' reimbursement provisions do not limit the right of reimbursement solely to any recovery of medical expenses by the enrollee or beneficiary. (12/2/09 Op. at 6.) Thus, to the extent the Vials argue that the Reyes Plan does not provide for a lien on settlement proceeds not covering past medical expenses, that argument is again rejected. Second, the Court held that the Plans were not required to assert their claims in state court because the state court lacked jurisdiction over those claims.[4] The Court further noted that the Vials failed to develop their *res judicata* (referred to by the federal courts as claim preclusion) argument or explain how it could apply in these circumstances. (*Id.* at 8 n.2.) Therefore, the Vials' assertions in their present filings that the Plans' claims are subject to *res judicata* or that the Plans should have sought relief in the state court are rejected.

**B.      Equitable Relief**

The Plans seek relief pursuant to ERISA § 502(a)(3), which authorizes a fiduciary to file a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132 (a)(3). In particular, the Plans seek "appropriate equitable relief" to enforce their reimbursement provisions. Section 502(a)(3) does not authorize all available forms of equitable relief, but rather is limited to "those

_____

[4]The Court recognizes the Vials' argument that the Plans could have pursued their subrogation rights in the state court action by stepping into the Vials' shoes in their claim against the medical providers, but in the instant case the Plans chose to rely on their reimbursement rights.

5

categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256, 113 S. Ct. 2063, 2069 (1993). Equitable relief is therefore "*something* less than *all*" forms of relief a court of equity would have been authorized to provide, which would have included legal remedies. *Id.* at 258 n.8, 113 S. Ct. at 2070 n.8.

The Supreme Court first considered the scope of equitable relief available under § 503(a)(3) to an ERISA plan seeking to enforce a reimbursement provision against a plan beneficiary in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 122 S. Ct. 708 (2002). The beneficiary in *Knudson* was seriously injured in a car accident and the plan covered all of her medical expenses. The beneficiary sued several third parties, whom she alleged were responsible for her injuries, and obtained a settlement. The plan sought to enforce its reimbursement provisions providing for repayment of plan benefits out of any third party recovery. Addressing the plan's assertion that it was entitled to relief under § 502(a)(3)(B) because it sought restitution, which it characterized as an equitable remedy, the Court observed that "not all relief falling under the rubric of restitution is available in equity." *Id.* at 212, 122 S. Ct. at 714. The Court noted that restitution was available both at law and equity, and whether the remedy was legal or equitable depended on both the basis for the claim and the relief sought. *Id.* at 213, 122 S. Ct. at 714 (citing *Reich v. Cont'l Cas. Co.*, 33 F.3d 754, 756 (7th Cir. 1994)). The Court explained that restitution was an equitable remedy when the plaintiff sought relief in the form of a constructive trust or an equitable lien upon "particular funds or property in the defendant's possession." *Id.* On the other hand, where the plaintiff's claim for relief is premised upon imposition of personal liability rather than restoration of particular funds or property in the defendant's possession, restitution would be a legal remedy, as the plaintiff's status would be that of a general creditor. *Id.* at 213-14, 122 S. Ct. at 714-15. The

Court held that the plan's claim for restitution was legal rather than equitable because the claimed funds (the settlement proceeds) were not in the beneficiary's possession, but instead had been placed in a special needs trust beyond the control of the beneficiary. *Id.* at 214, 122 S. Ct. at 715.

In *Sereboff v. Mid Atlantic Medical Services*, 547 U.S. 356, 126 S. Ct. 1869 (2006), the Court resolved a circuit split following *Knudson* over whether an ERISA fiduciary could enforce subrogation and reimbursement provisions pursuant to § 503(a)(3). *See id.* at 360-61, 126 S. Ct. at 1873. As in *Knudson*, an ERISA fiduciary sought reimbursement under the plan's third-party reimbursement provisions for benefits the plan had paid after the beneficiaries obtained a settlement from the third-party tortfeasors. Rejecting the beneficiaries' argument that the relief the fiduciary sought was not equitable, the Court noted that the fiduciary sought a constructive trust not on the beneficiaries' general assets, but instead upon a specified fund within the beneficiaries' possession and control. *Id.* at 362-63, 126 S. Ct. at 1874. Because the beneficiaries still possessed the portion of the settlement over which the fiduciary sought a constructive trust, the circumstances were distinguishable from those in *Knudson*. *Id.* Thus, *Sereboff* establishes that an ERISA fiduciary may seek relief under § 502(a)(3) if the plan's reimbursement provision identifies a particular fund and the share of that fund to which the plan is entitled and that fund or a portion of it is under the possession and control of the beneficiary. *Id.* at 363, 126 S. Ct. at 1874.

1.     **The Plan Language**

To determine whether the Plans seek legal or equitable relief under *Sereboff*, the Court first examines the relevant provisions of the Plans to determine whether they authorize recovery from a specifically identifiable fund rather than the beneficiary's general assets. Courts must interpret ERISA plan provisions "according to their plain meaning, in an ordinary and popular sense." *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir.1998). In applying this plain meaning analysis,

7

the Court must give effect to the Plans' unambiguous terms. *Lake v. Metro. Life Ins. Co.,* 73 F.3d

1372, 1379 (6th Cir.1996).

***The Reinhart Plan***

The reimbursement provisions in the Reinhart Plan summary plan description provide, in

relevant part:

**General Recovery Rights Provisions**
**Applicable To Right Of Subrogation, Right Of Reimbursement, Excess Coverage Provision And Workers' Compensation**

By accepting benefits paid by this *plan, you* agree to all of the following conditions. The payment of any claims by the *plan* is an advancement of *plan* assets. The *plan* has priority to receive repayment of those *plan* assets out of any amount *you* recover. The *plan's* recovery rights have priority over any and all other claims to recover damages. The *plan's* recovery rights will apply regardless of whether the amount of health care expense is agreed upon or defined in any settlement or compromise. The *plan's* recovery rights will apply even if any health care expense is excluded from the settlement or compromise. These rights will apply regardless of whether or not you are made whole.

. . . .

Any responsible or liable party means the responsible or liable party; any liability or other insurance covering the responsible or liable party; *you* or *your* covered *dependent's* own uninsured motorist insurance or under insured motorist insurance; any medical payment, no-fault or school insurance coverage.

. . . .

**Right of Reimbursement**

If benefits are paid under this *plan* and *you* recover from a responsible or liable party by settlement, judgement or otherwise, the *plan* has a right to recover from *you*. Recovery will be in an amount equal to the amount of *plan* assets paid on *your* behalf. The *plan's* right of reimbursement may be from funds received from any responsible or liable party. It will be to the extent of *plan* assets that are paid or payable for any health care expenses under the *plan*.

(Reinhart Plan Summary Plan Description at 5-7.)

8

The reimbursement provision satisfies the requirements of *Knudson* and *Sereboff* for the creation of an equitable lien by specifying a particular fund from which plan benefits must be reimbursed: "funds received" from any "recover[y] from a responsible or liable party by settlement, judgement or otherwise." *See Sereboff*, 547 U.S. at 359, 126 S. Ct. at 1872 (authorizing reimbursement of benefits from "'[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise).'"); *Knudson*, 534 U.S. at 207, 122 S. Ct. at 711 (authorizing recovery from "'any recovery, whether by settlement, judgment or otherwise,'" that the beneficiary received from a "third party"). The provision also identifies the particular share of the fund to which the Reinhart Plan is entitled: "an amount equal to the amount of *plan* assets paid on *your* behalf." *See Sereboff*, 547 U.S. at 364, 126 S. Ct. at 1875.

The Vials do not dispute that the provision creates an equitable lien by agreement, but they argue that it cannot be enforced against them in these circumstances because any recovery must be "from a responsible or liable party." They note that the providers, who disputed liability in the state-court proceeding, even in the Negotiated Settlement Agreement, have never been found to be "responsible or liable" for Chandler's injuries. The Vials further point out that the Reinhart Plan could have intervened in the state court action by asserting its subrogation rights in order to establish the providers' fault or responsibility, but it declined to do so. They argue that the plain and ordinary meaning of "responsible or liable party" precludes reimbursement absent a judicial finding, or perhaps an admission, of liability. The Vials contend that if the language is susceptible to more than one meaning, the rule of *contra proferentm* applies, and the ambiguity must be construed against the Reinhart Plan.

In contrast to the plans at issue in *Knudson* and *Sereboff*, which allowed the plans to recover from a "third party," the Reinhart Plan narrows the universe of recoveries to those obtained from

a "responsible or liable" party. Although the general recovery rights provision purports to specifically define the phrase "responsible or liable party," it does not do so and thus does not limit the plain meaning of the terms "responsible" or "liable." Both terms suggest a legal obligation imposed upon a party. *See* Oxford English Dictionary Online, http://english.oxforddictionaries.com (last visited Feb. 24, 2011) (defining "responsible" as "being the primary cause of something and so able to be blamed or credited for it" and "liable" as "responsible by law; legally answerable"); Merriam-Webster Dictionary Online, http://www.merriam-webster.com/dictionary (last visited Feb. 24, 2011) (defining "responsible" as "liable to be called to account as the primary cause, motive or agent" and "liable" as "obligated according to law or equity"). Where a party disputes liability, it cannot be said to be "responsible or liable" for the claimed injury absent a judicial finding to that effect. Here, there has been no such finding.

The Plans argue that focusing solely on the phrase "responsible or liable" ignores the general recovery provisions, which state that "[t]he *plan* has priority to receive repayment of those *plan* assets out of any amount *you* recover." They assert that this language makes clear the Reinhart Plan's intent to obtain reimbursement from any third party recovery. The Court rejects this reading because the general provisions are just that – a general summary of the rights applicable to all bases of recovery, including subrogation and reimbursement. After stating these general provisions, the recovery section goes on to separately describe the Plan's right of reimbursement, which is limited to recoveries "from a responsible or liable party." Because the Plan is asserting its right to reimbursement in this case, it is the language of that provision that controls. *See Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010) (noting that in interpreting an ERISA plan, a court's interpretation "should, to the extent possible, give effect to all language without rendering any term superfluous, but if both a general and a specific provision apply to the subject

at hand, the specific provision controls" (citation omitted)); *Saltzman v. Independence Blue Cross*, 384 F. App'x 107, 114 (3d Cir. 2010) (stating that "if a specific provision found in the plan conflicts with a general provision, the specific provision should control").

The Plan further argues that interpreting the reimbursement provision to require a judicial finding of liability contradicts the language providing for recovery from settlements. The Plan reasons that because a settling defendant rarely admits liability as part of a settlement, an interpretation that requires a finding or an admission of liability essentially reads "settlement" out of the reimbursement provision as a source of recovery. While it is often the case that parties settle litigation without an admission of liability, that is not necessarily true in all cases. For example, when liability is clear, a defendant will often admit liability and defend solely on damages. A settlement is still possible in such cases because it can limit the defendant's risk of exposure and allow the plaintiff to resolve the case short of a trial. The Plan further points out that the Vials' argument should be rejected because they alleged in their own complaint that the medical providers were liable. But this is no reason to ignore the plain meaning of the words at issue. A court must enforce the plain language of an ERISA plan, *Dade v. N. Am. Phillips Corp.*, 68 F.3d 1558, 1562 (3d Cir. 1995), and is not permitted to rewrite a term when it is clear and unambiguous. *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 81 (2d Cir. 2009). Had the Plan allowed recovery against an "allegedly responsible or liable party" the Vials' own allegations would allow for reimbursement, but that is not our situation.

Even if the applicable language were ambiguous, this would be an appropriate case to apply the rule of *contra proferentem* and construe the ambiguity against the Plan. The Sixth Circuit has invoked this rule against ERISA fiduciaries in construing language in ERISA plans. *See Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846-47 (6th Cir. 2000). At least one panel

of the Sixth Circuit, in an unreported decision, has questioned the propriety of applying this rule in cases where the ERISA plan contains a clear grant of discretion to the plan administrator to interpret the terms of the plan and the administrator's decision is being reviewed under the deferential arbitrary and capricious standard. *See Mitzel v. Anthem Life Ins. Co.*, 351 F. App'x 74, 81-82 (6th Cir. 2009). That concern is not present in this case, however, because the Reinhart Plan does not contain "a clear grant of discretion." *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir. 2000) (internal quotations omitted). Although the Plans assert that the administrator has discretion to interpret the terms of the reimbursement provision of the Reinhart Plan, the grant of discretion is not as broad as they suggest:

### DISCRETIONARY AUTHORITY

> Benefits under this *plan* will be paid only if the *plan administrator* decides in its discretion that the *covered person* is entitled to the benefits. The *plan administrator* will have full discretion to interpret *plan* terms; make decisions regarding eligibility; and resolve factual questions. This discretion will apply with respect to all claim payments and benefits under the *plan*.

(Reinhart Plan at 5-9.) While the plan administrator is granted discretion, such discretion is limited to "payments and benefits under the *plan*" and does not extend to reimbursement provisions. *See Bielenberg v. ODS Health Plan, Inc.* __ F. Supp. 2d __, No. CV-09-1188-ST, 2010 WL 4008362, at *3 (D. Or. 2010) (finding express grant of discretion to interpret reimbursement provision where the plan language provided "sole discretion to interpret and construe these reimbursement and subrogation provisions").

### *The Reyes Plan*

The Reyes Plan contains the following relevant provisions regarding its right to reimbursement:

### Right to Reimbursement

The right to reimbursement means that if a third party causes a Sickness or Injury for which you receive a settlement, judgment, or other recovery, you must use those proceeds to fully return to the Plan 100% of any Benefits you received for that Sickness or Injury.

**Third Parties**
The following persons and entities are considered third parties:

- A person or entity alleged to have caused you to suffer a sickness, Injury or damages, or who is legally responsible for the Sickness, Injury or damages.

. . . .

**Subrogation and Reimbursement Provisions**
As a Covered Person, you agree to the following:

- The Plan has a first priority right to receive payment on any claim against a third party before you receive payment from the third party.

- The Plan's subrogation and reimbursement rights apply to full and partial settlements, judgments, or other recoveries paid or payable to you or your representative, no matter how those proceeds are captioned or characterized. Payments include, but are not limited to, economic, non-economic, and punitive damages. . . .

  . . . .

- If you receive payment as part of a settlement of judgment from any third party as a result of a Sickness or Injury, and the Plan alleges some or all of those funds are due and owed to it, you agree to hold those settlement funds in trust, either in a separate bank account in your name or in your attorney's trust account. You agree that you will serve as a trustee over those funds to the extent of the Benefits the Plan has paid.

(Reyes Plan Summary Plan Description at 71-72.)

These reimbursement provisions meet *Sereboff*'s requirements for an equitable lien by agreement because they identify a particular fund from which the Reyes Plan is to be reimbursed and the portion of the fund to which the Reyes Plan is entitled. The Vials do not argue otherwise, but they do argue that, similar to the Reinhart Plan, the Reyes Plan provision limits the right of reimbursement to recoveries from a "third party that causes a Sickness or Injury." The Vials argue

that because there was no finding of liability in the underlying case the providers cannot be said to have "cause[d]" the injury. Here, however, the Reyes Plan differs from the Reinhart Plan because it provides a definition with meaning. That is, a third party includes "[a] person or entity *alleged* to have cause you to suffer" injury. (Italics added.) In the underlying case, the Vials did allege that the providers caused Chandler to suffer injury. Thus, a finding of liability is not a prerequisite to reimbursement under the Reyes Plan.

The Vials also contend that reimbursement is not permitted because the Reyes Plan does not authorize a lien on settlement proceeds covering elements other than past medical expenses. The Court disagrees. The reimbursement provision is not limited to recoveries for past medical expenses, but includes the full amount recovered without reference to amounts paid for past medical expenses. In fact, the general provisions state that the Reyes Plan's recovery rights apply to all third party settlements, "no matter how those proceeds are captioned or characterized."

## 2. Funds in the Vials' Possession

Even though the Reyes Plan identifies a particular fund and the share of that fund to which it is entitled, equitable relief is available only to the extent the Vials possess or control the fund. As noted, the settlement funds were distributed to various parties, most of whom are not defendants in this lawsuit.

The Plans argue that the fact that the settlement funds have been distributed is of no moment, because under the Sixth Circuit's interpretation of *Sereboff* in *Longaberger Co. v. Kolt*, 586 F.3d 459 (6th Cir. 2009), a plan's equitable lien attaches to the fund when the fund is identified and continues in those funds regardless of whether those funds are thereafter dissipated or commingled. The Plans' argument misses the point of both *Knudson* and *Sereboff* that, even as to specifically identifiable funds, equitable relief can be granted only if the defendant possesses or controls the funds at issue. In *Knudson*, equitable relief was not available because the funds were placed into

a special needs trust that was beyond the control of the beneficiary. Such an impediment was not present in *Sereboff*, where the settlement funds had been set aside in an investment account under the control of the beneficiaries.

With regard to the specific distributions from the settlement funds, the Plans assert that *Longaberger*, *supra*, authorizes reimbursement from the $190,000 paid to the Vials' attorney. While it is true that in *Longaberger* the Sixth Circuit did permit equitable relief to recover funds that were distributed to the beneficiary's attorney, the plan in that case actually sued the attorney who possessed the funds. *See* 586 F.3d at 462. Because the attorney possessed a portion of the settlement funds, the plan's request for equitable relief was permissible under *Sereboff*. In the instant case, the Vials never possessed this portion of the settlement funds, and for reasons known only to the Plans, the Plans did not name the Vials' counsel as a defendant, nor did they seek to add him or his firm as a defendant in this case. For the same reasons, the Plan is not entitled to equitable relief out of that portion of the settlement funds that were used to purchase an annuity for Chandler, and the Plans have not sued the insurance company that issued the annuity. *See Popowski v. Parrott*, No. 1:04-CV-889-JOF, 2008 WL 4372006, at *4 (N.D. Ga. Sept. 19, 2008) (granting an ERISA fiduciary's motion to add the insurance company that issued a structure settlement as a defendant for purposes of obtaining equitable relief because insurer controlled a portion of the specifically-identified settlement funds).

As for the Plans' suggestion that the providers' agreement to indemnity the Vials for medical expenses constitutes an identifiable pool of funds from which the Plans may seek reimbursement, this argument fails for several reasons. First, assuming that the providers' obligation to reimburse the Vials for medical expenses can be viewed as a pool of funds, the Plans have failed to establish any right to an equitable lien on such funds. While the Reyes Plan does create an equitable lien on any recovery the Vials obtained from the providers, the $400,000 settlement did not encompass any

amounts the providers or their insurer may hold for indemnity. Second, the providers are not

obligated to pay those funds, and the Vials have no right to them, absent a judgment imposing an

equitable lien upon funds the Vials possess on behalf of Chandler. Thus, the indemnification funds

would be available only if the Vials are first required to reimburse the Plans. Finally, the Plans can

only obtain relief against the Vials to the extent they possess any portion of the settlement funds.

Because the Vials do not possess the indemnity funds, they cannot be subjected to an equitable lien.

This leaves the $60,000 of the settlement funds the Vials hold on behalf of Chandler in their

capacities as his conservators. It is undisputed that the Vials possess those funds, and the Plans have

sued the Vials as Chandler's conservators. Under *Sereboff*, the Reyes Plan is entitled to an equitable

lien upon the amount the Vials received on behalf of Chandler out of the settlement funds. The

circumstances here are similar to those in *Administrative Committee for Wal-Mart Stores, Inc.*

*Associates' Health and Welfare Plan v. Horton*, 513 F.3d 1223 (11th Cir. 2008), in which the

Eleventh Circuit held that an ERISA fiduciary may seek equitable relief under ERISA § 502(a)(3)

with regard to funds the defendant held as conservator on behalf of her minor child. *Id.* at 1228.

The court reasoned:

> The fact that Ms. Werber holds the funds as a third party does not defeat the
> [fiduciary's] claim. Under *Knudson*, *Sereboff*, and the other authorities cited above,
> the most important consideration is not the identity of the defendant, but rather that
> the settlement proceeds are still intact, and thus constitute an identifiable *res* that can
> be restored to its rightful recipient.

*Id.* at 1229. The circumstances in this case are thus indistinguishable from those in *Horton*.

The Vials argue that the Reyes Plan's reimbursement provision should not be enforced

against the settlement funds paid for Chandler's benefit because Chandler was not legally

responsible for his medical expenses under state law, was not a party to the Plans, and thus did not

benefit from the payments the Reyes Plan made for his medical expenses. The Vials further argue

that under Michigan law, as is the case in most, if not all, other states, minors do not have the

16

capacity to contract for medical care, *McKinstry v. Valley Obstetrics-Gynecology Clinic, P.C.*, 428 Mich. 167, 191, 405 N.W.2d 88, 99 (1987), and such contracts may not be enforced against minors. In addition, they note that Michigan law precludes parents from contractually binding their children, *see Woodman ex rel. Woodman v. Kera LLC*, 486 Mich. 228, 240, 785 N.W.2d 1, 6 (2010), and to the extent Chandler is deemed a party to the Reyes Plan, he should be permitted to void the contract without having to reimburse the Reyes Plan for medical bills. The Vials urge the Court to adopt a rule, based upon a minor's lack of capacity to contract, that would permit ERISA plans to enforce claims for reimbursement only against recoveries parents obtain on behalf of their children, which would ensure that any reimbursement is received only out of settlements that actually cover incurred medical expenses.

Other than relying on state-court decisions, the Vials cite no case in which a court has held that state law rendering minors incapable of entering into binding contracts or precluding parents from contracting for their children can apply to deny an ERISA plan equitable relief under § 502(a)(3) in enforcing a reimbursement provision. Courts that have considered whether state-law protections for minors bar ERISA plans and fiduciaries from enforcing reimbursement or subrogation provisions have held that ERISA preempts such state laws. For example, in *Blue Cross and Blue Shield of Alabama v. Cooke*, 3 F. Supp. 2d 668 (E.D.N.C. 1997), the court rejected the defendants' argument that North Carolina's law allowing minors to contract only for necessaries applied to prevent the ERISA plan from obtaining reimbursement from funds the minors received in a settlement arising out of an automobile accident. *Id.* at 672. The court noted that "courts may determine that ERISA preempts state laws relating to ERISA benefit plans that have the potential of subjecting plan administrators to conflicting state regulations" and that "the necessaries doctrine was precisely the type of state law the ERISA preemption statute was designed to address." *Id.* Similarly, in *Estate of Lake v. Marten*, 946 F. Supp. 605 (N.D. Ill. 1996), the court joined several

other courts in the Northern District of Illinois and held that ERISA preempts Illinois common law precluding subrogation rights against a minor's estate. *Id.* at 608-10. *See also Iowa Health Sys, Inc. v. Graham*, No. 07-4030, 2008 WL 2959796, at *3 (C.D. Ill. July 30, 2008) (same); *IBEW-NECA Sw. Health & Benefit Fund v. Gurule*, 337 F. Supp. 2d 845, 857 (N.D. Tex. 2004) (noting that "most district courts that have addressed ERISA preemption have determined that ERISA preempts state anti-assignment and anti-subrogation statutes").

ERISA's preemption clause states that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). This "expansive" provision is "intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Aetna Health Inc. v. Davilla*, 542 U.S. 200, 208, 124 S. Ct. 2488, 2495 (2004) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523, 101 S. Ct. 1895, 1906 (1981) (internal citation and quotations omitted). *See also FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S. Ct. 403, 407 (1990) (noting the "breadth" of the preemption provision). A state law relates to an ERISA plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S. Ct. 2890, 2900 (1983). Preemption applies "even if the law is not specifically designed to affect [ERISA] plans, or the effect is only indirect." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S. Ct. 478, 483 (1990). Thus, under the broad reach of the preemption provision, even general state contract and tort laws are preempted. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48, 107 S. Ct. 1549, 1553 (1987).

In this case, the Vials seek to use general state contract law to preclude an ERISA plan from enforcing its reimbursement provision to restore plan assets to ensure that the plan remains financially sound for the benefit of all plan members. "'A primary purpose of ERISA is to ensure the integrity and primacy of the written plans.'" *Longaberger Co.*, 586 F.3d at 472 (quoting *Health Cost Controls v. Isbell*, 586 F.3d 459, 1072 (6th Cir. 2009)). The effect of applying the state law

principles cited by the Vials would be to interfere with the enforcement and administration of ERISA plans by limiting the equitable relief available to ERISA plans and fiduciaries under § 502(a)(3). *See Mello v. Sara Lee Corp.*, 431 F.3d 440, 444 (5th Cir. 2005) (noting that Congress sought to preempt state laws that "relate to" ERISA plans out of concern "that state laws might interfere with the administration and management of such plans"). The effect of applying these laws to prevent enforcement of ERISA subrogation and reimbursement provisions would not be "tenuous, remote or peripheral" to the administration of ERISA plans. *Shaw*, 463 U.S. at 100 n. 21, 103 S. Ct. at 2901 n.21. Accordingly, the Court concludes that ERISA preempts the state laws the Vials seek to invoke.

Notwithstanding the Court's conclusion that the funds the Vials hold as Chandler's conservators may be the subject of equitable relief under § 502(a)(3), the Plans have failed to demonstrate the Reyes Plan's entitlement to summary judgment. Although the Vials have not specifically raised the issue, the Plans have not shown that the Reyes Plan's reimbursement provision extends to dependents of plan members or participants. That is, the reimbursement provision refers only to "you." In the absence of a definition expanding this term to include dependents, the only reasonable interpretation is that it refers only to the participant or member. It may be that the Reyes Plan does define the term "you" to include beneficiaries, but at this point the record contains only selected portions of the Reyes Plan rather than the complete document, and none of those portions includes a definitions section. Thus, an issue of fact remains with regard to whether the reimbursement provision applies to the settlement proceeds.

### 3. The Vials' Equitable Arguments

The Vials also raise a number of arguments as to why restitution under these circumstances would not constitute "appropriate equitable relief," including that the Plans would be unjustly enriched by recovery of funds the Vials obtained for Chandler because the settlement funds do not

cover medical expenses, the Plans did nothing to protect their right to seek the medical expenses from the providers, and the Plans would unfairly benefit from the Vials' time, efforts, and expense in pursuing the malpractice claim.  The Vials also argue that the equitable doctrines of laches and unclean hands bar the Plans' claims for restitution.  The Court disagrees.

First, the Vials fail to sufficiently develop their arguments regarding laches and unclean hands, and the Court declines to address those arguments in any detail.  Even so, there is simply no basis in the record supporting either ground.  Second, with regard to the unjust enrichment arguments, to the extent the Reyes Plan is able to demonstrate that its reimbursement provision extends to settlements for dependents, the Court has already concluded that the reimbursement provision creates an equitable lien and the requirements of *Sereboff* are satisfied.  Moreover, while Chandler may not have received a direct benefit from the Reyes Plan in that he, individually, was not responsible for his medical expenses, there is no question that he did benefit, at least incidentally, because his parents were relieved of having to pay those expenses out of their own pocket.  Third, allowing the Reyes Plan to enforce its reimbursement provision is consistent with ERISA's purposes.  The Eleventh Circuit recently made this point in the face of arguments similar to those the Vials raise here:

> While we sympathize with O'Hara's situation, we cannot conclude that enforcement of Zurich's contractual right to full reimbursement conflicts with ERISA's policy of protecting Plan beneficiaries or that a balancing of the equities in this case requires application of the make-whole doctrine to defeat the Plan's unambiguous reimbursement requirement.  Although O'Hara himself will be in a better position if the subrogation provision is not enforced, plan fiduciaries must take impartial account of the interests of *all* beneficiaries.  Reimbursement inures to the benefit of all participants and beneficiaries by reducing the total cost of the Plan.  If O'Hara were relieved of his obligation to reimburse Zurich for the medical benefits it paid on his behalf, the cost of those benefits would be defrayed by their plan members and beneficiaries in the form of higher premium payments.  Plan fiduciaries must also ensure that the assets of employee health plans are preserved in order to satisfy present and future claims.  Because maintaining the financial

viability of self-funded ERISA plans is often unfeasible in the absence of reimbursement and subrogation provisions like the one at issue in this case, denying Zurich its right to reimbursement would harm other plan members and beneficiaries by reducing the funds available to pay those claims. Moreover, O'Hara availed himself of the benefits of the Plan with the knowledge that the Plan would be entitled to full reimbursement for those benefits in the event he was injured and received full or partial recovery from a third party tortfeasor.

*Zurich Am. Ins. Co. v. O'Hara*, 604 F.3d 1232, 1237-38 (11th Cir. 2010) (internal quotations and citations omitted). The Court concurs with this analysis and thus rejects the Vials' arguments.[5]

## IV. CONCLUSION

For the foregoing reasons, the Court will deny the Plans' motion for summary judgment. The Court will grant the Vials' motion for summary judgment with regard to the Reinhart Plan's claim for equitable relief and deny it with regard to the Reyes Plan's claim for equitable relief. An issue of fact remains with regard to whether the Reyes Plan's reimbursement provision extends to recoveries by dependents of plan members.[6]

An Order Consistent with this Opinion will be entered.

Dated:  March 17, 2011                    /s/ Gordon J. Quist
                                        GORDON J. QUIST
                                        UNITED STATES DISTRICT JUDGE

---

[5] As the Plans point out, allowing the Reyes Plan to enforce the reimbursement provision is not unfair to Chandler because pursuant to the settlement agreement, the providers remain liable for the medical expenses.

[6] The Vials also raised the issue of whether the some of the amounts the Plans sought were for routine medical care unrelated to the injuries at issue in the malpractice action. The bulk of the disputed charges related to the Reinhart Plan, which the Court has concluded is not entitled relief under its reimbursement provision. The Vials identified one charge under the Reyes Plan as being in dispute. Thus, an issue of fact remains regarding whether inclusion of the $117.99 charge for the October 27, 2006, visit should be included in the amount of reimbursement the Reyes Plan may claim.